# Summit Township Poor District, Plff. in Err., *v.* John E. Byers.

A poor district is liable to a physician for his medical and surgical services rendered in a case of emergency, to a poor person who is without means, when the bill is certified and approved by two justices of the peace after the services were rendered.

(Argued October 19, 1887. Decided October 31, 1887.)

October Term, 1887, No. 207, W. D. Error to the Common Pleas of Butler County to review a judgment in favor of plaintiff in an action of assumpsit for medical services. Affirmed.

NOTE.—For liability of poor district for emergency relief given by physician to paupers, see note to Westmoreland County v. Donnelly, 3 Sad. Rep. 483.

The facts appear from the following portions of the charge of the court below:

"This is an action of assumpsit brought by John E. Byers against the poor district of Summit township, for the purpose of recovering a bill of $50 for medical and surgical services rendered a little child, son of Mrs. Mayes. His claim is based upon the allegation that this child was injured by being thrown from the railroad track by a passing train, which resulted in the fracture of the bone of one of its legs, and was treated by Dr. Byers.

"There was no imputation or allegation that the treatment was not skilful. The child recovered. There is nothing in the case to indicate that it was not skilful treatment. The child's leg is all right. There is no defense made to the payment of the bill on that ground; but the defense made by the township to the payment of the bill is on the ground that the township is not liable, but that these proceedings were not (that is, preliminaries to the suit) legal, and that the plaintiff cannot recover against the township upon that ground.

"There is no question in my mind but that the regular mode and manner of proceeding in cases of this kind would be to have an order of maintenance issued by two justices of the peace. That order should be issued to the overseers of the poor directing and commanding the overseers to take charge of the poor person, to enter the name of the person upon the poor books, and from that on proceed to give all the necessary relief. When that order of maintenance is made upon the overseers of the township or district, it is their duty to take charge of the pauper, to give him the relief necessary, to whatever extent it may be necessary, medical treatment, support, good clothing, and everything else that he or she may need.

"If the overseers of the poor upon whom the order of maintenance has been made have reason to believe that the pauper does not belong to them, they may ascertain where his or her last place of regular settlement might be; they can then make application to two justices of the peace and get an order of removal directed to his or her last place of legal settlement. When that has been done, from that order of removal an appeal lies, which being brought into the court of quarter sessions the question of legal settlement would be determined. I do not think that an appeal lies from an order of maintenance, but it is my present

view of the case that the order made here is a mere approval of the bill of Dr. Byers by two justices of the peace in the borough, a mere approval of that bill.

"We think that is not equivalent to an order of maintenance. That is the main question in the case. That is the question upon which this case turns. We intend to reserve that question, and any other question of law raised by the points submitted to us, for future consideration and determination; and the only question to be submitted and passed upon by you is, in the first place, assuming the fact that Doctor Byers was called upon and treated this child, that he did treat him and treated him successfully— whether his bill for his services so rendered is reasonable, fair, and right, or whether it is unreasonable. Now, that is the first question for the jury to pass upon. Call to mind the proof upon that point. . . .

"The other question of fact that has been argued, which will be submitted to you, is whether this child, under all his surroundings, as proved in this case—as a fact in the case—whether or not he was a pauper. The allegation is that the mother was able to pay Dr. Byers and to pay for nursing and attending to her child—that she had sufficient means. Now, I know of no obligation resting upon the mother at common law to support her child. We have an act of assembly which makes it, when the act is put in force, obligatory upon the father, the mother, the grandfather, upon the child and the grandchild, to render support mutually to each other, in case they are of sufficient ability; but that requires a separate proceeding. A proceeding of that kind is commenced where a person, by reason of age or infirmity, has no means of support; he may come into the court of quarter sessions and present his petition setting forth that he has a son or sons who are of sufficient ability to support him, or that he has a daughter or daughters who are of sufficient ability to support him; or he may go a step farther, and he may set forth that he has grandsons or granddaughters who are of sufficient ability to support him. These facts being proved to the satisfaction of the court, it may make an order upon the sons or daughters, grandsons or granddaughters, being found of sufficient means, to pay or contribute so much a week for the support of the parent or grandparent. If the child had become a serious charge upon the township of Summit, there might have been possibly a proceeding instituted to compel the mother to furnish relief and

support to the child; but that would have required proof to satis-
fy the court that she was of sufficient ability.

"Now then, that comes down to the question that you are to
pass upon. Was she at this time of sufficient ability to pay Dr.
Byers, and otherwise support and maintain this little child?
Now, what was the proof upon that point? The proof is that
she was hired and living with Mr. Bartley, for a good part of the
year, at the rate of 50 cents a week over and above her own
boarding and the boarding of the little child.

"Now, it will be for the jury to say. This young woman was
hired out over and above her own boarding and the board of her
child at 50 cents a week; and when she came to supply clothing
for herself and clothe the little boy, and the other necessary ex-
penses to which she would be for herself and child, upon that,
whether she was of sufficient ability, and whether it would justi-
fy the court in making an order upon her, in case it was in that
shape before the court, to pay so much a week or so much a
month, for the support of her child. It does not seem to me that
she would be of that sufficient ability, under all the circum-
stances, to do any more or much more than at least support her-
self by the labor of her hands. Now, it is true that there is some
proof of her having a few dollars of money in her pocket—the
few dollars that she intrusted to her father. That was
after this bill had been incurred. It appears that she
had some means, some money, but in all amounting to less than
$40. It will be for you to say then whether in fact under all
the circumstances proved in the case, whether or not, in fact, this
little child was not and is declared to be a pauper, unable to sup-
port himself, without means and without any relative that comes
within the provisions of the act—father, mother, grandfather,
or grandmother, that was of sufficient ability at this time to have
responded with his or her means to an order of maintenance
made by the court in case it had assumed that shape. [The
probabilities are that you will in the end have to come to the con-
clusion that this little child was a pauper without means, and
with no one standing in that degree of relationship to him who
was of sufficient ability, had means, had property, that the law
could take hold of and apply it to the maintenance of the person.
It would not be the fact in this case.] 1

"If you find also that this bill of $50 is not unreasonable, but,
under all the proofs and circumstances in the case, right and

just, then your verdict should be for the plaintiff for $50, with interest upon it from the time that the services were rendered. If from the proof you are justified, you can reduce it to whatever you believe would be just and right. If from the proof you are satisfied that the child, to whom these services were rendered, was not a pauper there, but had means or any means, or those standing in the relationships that we have mentioned were of sufficient ability to maintain and support the child, then you would be justified in rendering a verdict for the defendant. If you are satisfied that he was a pauper, with no one of sufficient ability to render support, and that this bill is—if too high and unfair, then reduce it to what you think right under the proofs, and return your verdict for the plaintiff for that amount.

"That leaves the question upon which this case may ultimately turn, and upon which we may ultimately be compelled to give judgment for the defendant, notwithstanding your verdict; but that being a question of law, we reserve it for future consideration and submit the facts to you."

The defendant submitted the following points:

"1. That Louis Mayes was not such poor person as the act of assembly contemplates, having a mother who was a widow in full life, with whom he lived at the time of the alleged accident, who from the testimony it appears would have been able to pay a reasonable doctor's bill had the same been presented to her, or had she been informed or notified that she was liable therefor."

*Ans.* There is a question of fact raised by this point, and that question has already been submitted to you. 2

"2. That under all the proofs and the law in the case, the plaintiff is not entitled to recover."

*Ans.* That raises a question of law which we reserve for future determination, whether or not under the circumstances of this case and the law applicable to it, the plaintiff can ultimately maintain this suit. 3

"3. That if the alleged order of relief had been served upon defendants they would have had the right of appeal to the court of quarter sessions, provided in such cases."

*Ans.* That also raises a question of law which we reserve, although, as far as we now see, we would answer the proposition in the negative, because we think there is no right of appeal from an order of maintenance. 4

"4. That the paper purporting to be an approval of the plaintiff's bill, by Esquires Irvine and Walker, is not such an order for relief as is contemplated by the act of assembly; and the same, not having been served on the overseers of the poor of Summit township prior to the bringing of this suit, or after the same was brought, can have no effect and the plaintiff cannot recover."

*Ans.* That is the question of law again repeated, merely in another shape, which we reserve.

"5. If the child injured had no legal settlement in Summit township, and no notice was given to the overseers of the poor of Summit township that it was a pauper, and that a bill had been incurred in its behalf prior to the time the child got well and removed from the township, then no legal liability attached to Summit township, and the plaintiff cannot recover."

*Ans.* The question raised by that point is also reserved.

"6. If the jury believe that the persons who employed Dr. Byers, the plaintiff, did so because they believed that he was the surgeon of the railroad company, whose duty it was to treat injuries caused by the railroad, free of charge to the persons injured, and they permitted him to go on and treat the case under that belief, and he held out to them either that he was the surgeon of the railroad company, or that the railroad company would pay him for his services, then he cannot recover against the township."

*Ans.* We think this question does not arise in the case; and we think the proof would not sustain the allegation at all events, because Dr. Byers, if I recollect his testimony, did not say that the railroad company would pay him; nor did he say positively that he was in the employ of the railroad company. He did say that he had been the last year or the year before, but he was not a surgeon in the employ of the railroad company that year. He did not say that he looked to the railroad company for his pay. He frequently expressed the hope and trust that the railroad company would pay him; and the mother of the child corroborates this; so there was nothing in the case from which we could say that Dr. Byers's claim for his bill was confined to the railroad company. If he got it from the railroad company, well and good. If he did not, then he looked to the party whom he treated; and if that party is a pauper, unable to pay, and the accident occurred in Summit township, in the

case of an emergency, etc., then it comes back again to the question of whether Summit township is liable, and if liable, whether the proceedings are regularly and properly commenced; whether the proper preliminary steps have been taken to render Summit township liable. That is a question of law which we reserve. 7

"7. If the child had no legal settlement in Summit township, the plaintiff cannot recover in this case."

*Ans.* We think that point does not arise in the case. We would refuse to instruct you as prayed for in that point. It is immaterial, we think, in this case, whether the child had a legal settlement in Summit township or not. In case of an emergency, an accident occurring there, if he was a pauper, and the case one of emergency, the treatment was necessary and the dictates of humanity that not only relief should be prompt, but that it should be the best within reach. Humanity dictates that a pauper, poor as he may be, poor as Lazarus, if he becomes a charge upon the township, the township would not be justified in calling in a second or third rate physician or surgeon. They would not be justified in that. Humanity, justice, and right would require that they should bring to the aid of the pauper the best treatment that the nature of the case would admit— the most skilful surgeon that was within reasonable reach. We do not think that question comes up in the case, and we refuse so to instruct you.

The jury rendered a verdict for plaintiff for $48.16, and thereafter the court, HAZEN, P. J., filed the following opinion on the reserved question:

"The question reserved by the court at the trial of this case, it seems, was 'whether the approval of plaintiff's bill by the two magistrates, after the services were rendered, without an order of relief, was such an order of approval as the act of June 13, 1836, § 6, contemplates to entitle plaintiff to recover thereon in this action.'

"The verdict rendered in this case establishes the following facts: (1) That the patient was a poor person; (2) that the services were rendered; (3) that it was a case of emergency; (4) the amount of said services; (5) that said services have not been paid.

"The statement of claim shows the so-called 'order of approval' attached thereto and made a part thereof. Plaintiff, by his

counsel, contends that the 'order of approval' is such as is contemplated by the act, and that therefore he ought to recover and now have judgment on the verdict in his favor and against the defendant. There is no form of 'approval' prescribed by the act; that is left entirely to the judgment of the magistrates when called upon to exercise the authority thereby given them. Apt words, it is true, should be used by the magistrates to express their intentions. When the substance is found with reasonable certainty there will be no doubt of the intention; and, then, want of form, when not prescribed by the act, will not prevent recovery. The facts in this case seem to establish good grounds to entitle plaintiff to such an 'order of approval' as is required by the act. Then in the absence of prescribed form for such 'order of approval,' and with all the essentials necessary, is he not entitled thereto in proper form, and has he not got it in proper form? We think, from a careful examination of this case, that he has the order in proper form and was entitled thereto, and that he should recover on this action, under authority of Chester County Directors of Poor v. Worthington, 38 Pa. 160. We are not unmindful of the danger attending our sustaining such a questionable practice—although good in only a few instances, bad in the many, and not very commendable in any. Therefore, verdict sustained, and judgment allowed in favor of plaintiff and against defendant."

Thereupon judgment in favor of plaintiff was entered upon the verdict, and defendant took this writ, assigning for error: 1, The portion of the charge inclosed in brackets; 2–8, the answers to points, indicated above by exponents; and 9, the following, in respect to the opinion on reversed question: "The court erred: 1, In not answering the questions raised by the points presented by the defendants, and in not passing upon the questions of law reserved by the court on the trial of the case; 2, in deciding that the order made by Esquires Irvine and Walker was sufficient in form as an order of approval, and that therefore the plaintiff was entitled to judgment on the verdict; 3, in directing judgment to be entered on the verdict in favor of the plaintiff and against defendant."

*S. F. Bowser* and *Fleeger & Moore* for plaintiff in error.

*W. D. Brandon* and *T. C. Campbell* for defendant in error.

PER CURIAM:

This case is ruled by Westmoreland County v. Donnelly, 3 Sad. Rep. 483, which was a suit brought by two physicians against a poor district to recover compensation for professional services rendered paupers. One of the plaintiffs was employed by a railroad company for a specific sum per month to attend cases of personal injury for which the company might be responsible. Plaintiff attended numerous persons injured, some by accidents upon the property of the railroad company, and others by accidents received elsewhere. The persons injured on the railroad were chiefly trespassers, and all were paupers upon the defendant. After the services were rendered the plaintiff presented his bill to the railroad company, which declined to pay. He then brought suit against the county, and it was held that he was entitled to recover as to all emergency claims, but not as to the others.

The verdict in the case in hand establishes the following facts: (1) That the patient was a poor person without the means to satisfy the plaintiff's bill; (2) that the services were rendered; (3) that it was a case of emergency; (4) the value of said services; and (5) that said services have not been paid.

We have also the certificate of two justices of the peace that the bill of plaintiff was correct and that they approved of the same. They also "find that the said Louis Mayes is a poor person unable to pay the same; that the illness was sudden and the emergency great."

We are unable to see any serious error in the rulings of the learned court, and upon the facts the case was overwhelmingly with the plaintiff.

Judgment affirmed.